Case is Trade Consulting, Incorporated v. United States, 2007, 5172. Mr. Kellogg, on your way. It's actually pronounced C-H-E. I'm sorry? It's actually pronounced C-H-E Consulting. C-H-E, all right. Not necessarily Chinese. No, exactly. May it please the Court. My name is Steve Kellogg, and I represent the appellant, C-H-E Consulting. The principal issue in this case is whether a court in an APA case can grant the government, for lack of a better term, a do-over, an opportunity to go back and fix their procurement while the protest action is still ongoing. Now, according to 60 years of Supreme Court precedent and Congressional mandates in the form of the Administrative Procedures Act, the answer is that the court obviously cannot do that. Well, I spent some time on this issue, and it seems to me the one thing one can't say is to use the word obvious either way. I mean, the Esch case from the DC Circuit seems to bless exactly that process, at least in some circumstances. So let me ask you, before we even get into this very complex area of administrative law, and I grant you it presents some difficult questions. My question is, did you object to the trial judge's proposal to follow this procedure? Because I've read through the materials that you've provided us in the joint appendix, and I don't see an objection. And the trial judge says in his opinion that the counsel agreed to this process. Now, if you agree to it, I don't see where you are situated to come up here and say it shouldn't have been done. Sure, Your Honor. I did it in two different places. Let me show you the two places that I found, and then if there's another place you can help me. Because the two places I found I didn't find to be an objection to the process. The first was on JA 554. Correct. And where, Your Honor, I would note that the agency has not met its burden and that the injunction should issue. That's correct. And a second place is over on 606 when you say something to the effect of you'd like discovery. Now, was there anything else? Well, sure, even in our briefs. We had to brief the issue again. I objected to it there as well. Your briefs? Yes, we went through two rounds of briefings, okay? The first was right before this hearing, and after the hearing was over, you could tell that the judge had already made up his mind what he was trying to do. Actually, from my viewpoint, I think he was trying to steer the parties into trying to settle this matter is what he was trying to do. But at the end, he said, what I'd like you to do is, he didn't order the agency to do this, but he said, if you would, go out and do some market research to see if any other federal agencies are splitting up this procurement or if they're putting it together. Do a cost analysis, things that have never been considered before. At that point, when he had explained everything, that's when I got up and I said, well, Your Honor, at this point in the litigation, the Justice Department has not met their burden of proof. Well, but this is what you have here on 554. Yes, as such, the injunction was issued. Let's assume. I didn't use the term objection at that point. Well, it's two different things, it seemed to me. One is to say, I think, based on what's on the record right now, there's a sufficient basis for me to win, versus saying I object to any further process. I mean, the process could have been helpful to you or it could have been harmful. It turns out the judge concluded that it was not helpful to you. Well, I knew. But you can't conclude at the outset that, well, we'll see how it works and whether it helps me or hurts me, and then I'll decide to object. Well, I guess I just disagree with your assessment that by my standing up there in front of the court and saying, no, what we should do is issue the injunction because the federal government has not met its burden of proof, that is me, CAG, saying we shouldn't go down that route. We should issue the injunction because the case should end right here and now. Now, this, that's, and so that's how we interpret that. Okay, now, you're not going to do anything in briefing prior to this? Okay, we briefed before this. Yeah. And we had the hearing. All right. Okay. Then the judge ruled, okay, you're going to go out and do a market survey if you want to. You don't have to. If you want to, go ahead and get back with us next week. And that second part that you were referring to was us getting back to him the next week. But then after the report came back, then the judge said, we need you to go ahead and rebrief the issues. Actually, before that, I said, well, I want to go ahead and issue, I want some discovery on this. Because, you know, you've asked them to do this right in the middle of the litigation. How on earth can it be objective? And so I actually filed a motion, and it's in the administrative materials. I filed a motion seeking discovery. Okay. And in that motion, I also said, because what we have here are a bunch of post hoc rationalizations. Did you object to the process that the judge had launched on? You say you think they are post hoc rationalizations, but did you object to the process of allowing supplementation of the administrative record? Well, I mean, they had already supplemented at that point. They did that within 45 days. Is that what you're referring to? Well, what I'm trying to get at is, if the judge is right in saying that both counsel agreed to this process, or at least didn't object, and that's what he said in his opinion, then it seems to me we have a different case than what we do if you made it clear to the judge that you objected to this 45-day supplementation process. Okay. Well, if you're looking for the objection before they actually did it. Yeah. All right? That's me standing up in court saying the injunction should issue now. Okay. Okay? All right. And, you know, I'll be candid about that. But, you know, when I stood up there and the judge ended up making that pronouncement that this is what we're going to do, I knew we were going to lose at that point. I mean, everybody knew at that point that what the agency was going to do was go out there and find something that supported their previous decision. Okay. All right. Now, I'm not necessarily certain that this is something that we can weigh. Why didn't the trial judge err in even asking for this additional justification? If there was rational basis is all that's necessary, why wasn't there rational basis on the record we have? He said there wasn't. The judge said there wasn't. Can this court reach that without further supplementation of the record? Do we have to go to the whether or not it's explanatory material? No. I don't think this court can do that at all. It was the trial judge that read the briefs. It was the trial judge that sat through the hearing. And it was the trial judge at the end of the hearing that said, I can't tell from what you have done whether or not your decision is right or wrong. Whether or not it's just, you know, because I think he even made the statement that, you know, it could be true. It might not be true. I can't tell from what's in here in the record. He also said that government had not gone out and done its own homework on this. And maybe what they needed to do was go out there and do their homework. And it was at that point, and I understand that this is, I guess this is a contention for you, Your Honor, but when I stood up there and said, I mean, I said it with conviction. I said, you know, come on. It's time for the injunction to issue. We made our case. They didn't make their case. And so the case should end right here and now. Issue the injunction. And that doesn't mean that CHE automatically gets the contract. That just means that the government has to go, they have to prove their case, that they have to, that it's proper to bring these two separate elements together into a single procurement. That leads to my next question about remedy. If you're right, what does the Court of Federal Claims direct the agency to do? Can the agency, suppose that the Court of Federal Claims concluded that it couldn't supplement the record, but instead had to send the case back to the agency. Does it send the case back to the agency with instructions to reconsider whether to have a bifurcated or a unitary solicitation, or must the agency have a bifurcated solicitation? That's a fair question. The answer, the way I see it, Your Honor, is that the whole issue, when we stood up before, you know, all of the briefs were about whether it should be bifurcated or whether it should be segregated. Right. Okay. We briefed it. We, you know, each side had affidavits to it. We'd actually done this at the administrative level as well before we even got to the Court of Federal Claims. And it was at that point, I mean, that was the time to make the decision. Had the agency justified its decision to go ahead and keep these two together and restrict competition? The judge at that point said, you haven't made your case. And so his remedy at this point is simply to issue the injunction saying that you cannot, you're not justified keeping these two separate elements together. And so then it's up to the agency at that point to do whatever they want to do. I mean, the judge isn't in a position at that point to try to tell them that here's how you need to structure your procurement. Let me give you a hypothetical. That seems to me to kind of jump over a part of the process that the agency has not necessarily failed to justify. They have failed to provide enough information to warrant the courts exercising judicial review and concluding that in the course of judicial review that the agency is right. But that doesn't mean that the agency was proved to be wrong. There's a middle ground. I agree with that. Now, and if that's right, then the agency presumably takes another shot at this question of whether there ought to be bifurcated or unitary solicitation. And if they conclude on their further shot that there should be unitary, then you can get another review. Well, Your Honor, there's even another option, okay? But before I get to there, this was their moment in time to prove that they had done what they were supposed to do. This was their burden. I mean, we made the burden prove that this was an arbitrary, capricious decision on their part. It was their job to come in and say, no, it wasn't, and we have reasons to do so. They didn't do it. They didn't make their case. I mean, at some point, we have to say it's their fault. Well, Mr. Kellogg, you do agree that the Camp v. Pitts rule allows them to explain. Absolutely. I totally agree with that. And this is— Don't the statements of the oceanographer and the admiral and the contracting officer, can't they be construed as explanatory of the original decision, not post hoc rationalization? You're talking about in the original administrative record? No, I'm talking about the affidavits of the oceanographer that come in afterwards. Why can't those be read as explanatory? Well, sure, but those affidavits were in the rear admiral. All that was—I mean, those were the exact—they were just as perked and had just as little information as the original affidavit that the trial judge said was not enough. It didn't have enough information. Now, perhaps the trial judge relied on it. I don't know. I don't know what the trial judge ultimately relied on, but we can look into his decision. And his decision, he bases it primarily on all of the post hoc rationalization reasons. I mean, if you look at—and I want to get back to your point, Judge Bryson, in just a second, but I do want to make this point. This is in the decision JAARX111. It's the B section where the judge is laying out the reasons why the agency's decision to combine the hardware and software into one contract was reasonable. And when you read through that, he is citing primarily all of the market survey research, which was done after the fact that nobody ever considered before this, and he's doing the cost analysis as well. So, you know, even if—and I don't even think I put this in the brief. Even if you can say that the Ritter-Admiral's affidavit, for example, was an explanatory affidavit, you don't know from this whether or not that's the basis for his ruling because he has permeated his decision with all of the other extra additional explanations. Mr. Keller, you're well into your rebuttal time, which you can use or save. Well, I want to get right back to Judge Bryson's—the last option, if I could. One other option that the judge could have used was to say, okay, Justice Department, I hear your arguments. You've not convinced me that there is enough here. What I want you to do is bring back the contracting officer, bring back somebody else, and we'll have a trial on it. Or he could allow me to do a deposition to explain the rationale for their decision. I have no problem with that whatsoever. If that testimony of the contracting officer still didn't persuade the judge, then—and this is bottom line—do we go back to option number one or option number two? Option number one being direct the agency to have a bifurcated solicitation or option number two, allow the agency to reconsider on a more complete analysis of the question whether it ought to be bifurcated or unitary. Well, again, I don't think that the trial judge is in a position to direct the agency how they should structure their procurement. I think the only thing that the judge can say is that the way you've structured it now, you have not established what you were supposed to establish in order to restrict competition. I think that's about as far as any court can go because, you know, granted, I mean, the administrative agency has given lots of discretion. We don't want to— I don't think I understand exactly what you're saying there. Are you saying that the judge can simply say to the agency, go back and take another look at this? Well, I don't think he can actually go back and try to remand it and, again, do a do-over, so to speak. No. I mean, well, I think he has to issue the injunction. Well, the injunction to do what, though? No, the injunction from going forward with the procurement as it is. Well, but until they've made a determination as to the reasonableness of the bifurcated or unitary solicitation, or do they just have to give up on the unitary solicitation? No, no. I think the way it works, I think the way it should work, is the judge says, no, you haven't proved it. I'm going to issue the injunction. At this point, the way you've set it up, you've not done it. Now, at that point, I mean, the agency gets to do whatever it wants to do. Yeah, but— The agency can, okay, well, you know, the judge said we didn't have enough. At that point, why don't we go on and try to figure this thing out? Okay, so they can do a do-over. Well, that's a do-over. You just described a do-over. But the injunction has issued. So what? Well, that's a huge difference. They can go back and do another study in which they look at exactly the stuff they looked at in this case and come to the same conclusion that they— But that study is going to be far more objective, Your Honor. I mean, you cannot expect, no one can expect the contracting officer in the middle of a litigation where she has been sued, where the agency has been sued, to go out there in the middle of it and do that. Okay, I understand your point. Okay, thank you, Your Honor. Thank you, Mr. Kellogg, for time that's been more than consumed. Mr. Krafchick. Yes, Your Honor. Good morning, and may it please the Court. Your Honor, if we may immediately respond to some of the appellant's contentions and then address the points we'd like to bring up to the Court today. First of all, Your Honor, the appellant never met its burden of establishing that the agency's actions was arbitrary or capricious. There's nothing in the joint appendix or in the Court's decision that the Court determined the agency's original basis was arbitrary or capricious. So everything else that the appellant is saying is really an attempt to shift the burden from plaintiff to defendant in this matter. As a matter of fact, in the opinion, the trial court explicitly stated that in the J.A. 550 that there was an intuitive logic to the agency's original determination and went on to say that although he supplemented the record, he did not. That by itself does not automatically validate the agency's original decision. And that's at J.A. Roman numeral 14 and 15, Your Honor. The issue that goes directly to the heart of this case is whether or not the agency violated the Competition and Contracting Act. And in this case, by having a unitary solicitation, they do not. It does not. SECCIT expressly permits restriction on competition in limited circumstances. For instance, SECCIT permits agencies to issue a sole source contract. It allows for the SBA and 8A set-asides. And also, in Congress, it's specifically passed the Randolph-Shepard Act, all of which limit competition under certain circumstances. The other issue that appellant has failed to even address or respond to that in this matter, it directly relates to national security and national defense. Many of the cases cited, all of the cases cited by the appellant, they're not dealing with issues where national defense is squarely in front of the court, as it is in this case. In this case, we know that the supercomputer services from the Major Sherry Resource Center go directly to support our Navy fleet, and they provide real-time information. So it is separate and distinct from what, for instance, the Defense Intelligence Services Agency, DISA, provides. This goes directly to the war effort. And some of the supplemental affidavits show that troops in the field are actually relying on real-time information provided by these computers. Is all of your argument up to this point in support of the proposition that the trial judge should have gone ahead and just ruled in favor of the decision of the contracting officer without any remit or without any supplementation? Absolutely. That's exactly what we're doing. We think the court could have and should have ruled on the original administrator. Okay. Let me, if you're done with that presentation, I really do want to focus on the question of whether the supplementation was lawful or not, in light of Camp against Pitts and Overton Park and the cases after that. Certainly, Your Honor. And to be frank, we typically argue against supplementation. But in this case, we think the record supports the trial court determination that he had to supplement. The law is pretty clear. There's the general rule that if an agency does not have a reasonable basis that's articulated in the administrative record, well then, the court, that's what the agency has to do. They have to have a reasonable basis in the administrative record to show a contemporaneous rationale. And in this case, we have a contemporaneous rationale. And what we have after the fact, after supplementation, is nothing more than background information. Specifically, and one thing we'd like to address from what Appellant said, J1864, Mr. Rosinicus, whose name I might be butchering, talked about how any benefit from savings in cost would certainly be outweighed by the requirement to insure against any type of disruption in service. Let me give you a hypothetical. I'm having a hard time really understanding exactly what background information means. Does that mean empirical evidence that would be consistent with the contracting officer's hunch if the contracting officer acted on the basis of a hunch but without knowledge of the empirical evidence? Let me give you a hypothetical to tease that out a little bit. Suppose that you've got two potential competitors, one of which offers on a Navy ship a very advanced radar system, and another one offers a radar system that's 10 years old. And the contracting officer decides to put in the solicitation that he wants the advanced radar system. And the second contractor says, there's no difference between the two. It's just all bells and whistles, and there's no fundamental difference, and therefore you're cutting me out of a solicitation by virtue of asking for the advanced. And the contracting officer says, you know what? The Navy goes for the most current, state-of-the-art stuff. We don't want to have our ships out there with stuff that's 10 years old. I'm limiting it to the advanced. And then you go up to the Court of Federal Claims. In the Court of Federal Claims, the judge looks at that and says, I don't see any basis for this contracting officer's hunch other than, you know, so it's newer. That doesn't mean it's necessarily better or even different. And the Navy says, okay, for background information, we want to introduce all sorts of evidence that there is a difference between the two, and here it is. And they bring in a big, thick book that distinguishes between the two and shows that there are 35 important differences between the two. Is that book admissible? Is that background information? And the judge ultimately says, well, I've read the book. It's a knockout. Navy wins. I think it would go to the extent of the information the contracting officer had. The contracting officer was, his only information was that in his experience, newer is better. Point. That's it. Well, under that scenario, Your Honor, if I may ask a question, Your Honor, in that scenario, the trial court has determined that supplementation is appropriate, or is the agency— The trial judge says, I want supplementation, and the contractor, the unsuccessful bidder, says, how much is it not allowed? Under camp against me, it's better than anything else. And the judge said, but this is just background information. And the contractor says, no, it isn't. It's a substitution of a whole lot of evidence for what was against. Under that scenario, Your Honor, where a plaintiff objects and takes issue, which is what we don't—we do not have an objection in this case. Under that scenario, we're not—to be quite frank, we're not certain. And we think the appropriate remedy at that point, and we recognize the trial court has discretion in determining whether or not a record should be supplemented. But it's a record. It's an appellant or two, the plaintiff would object, and the trial court would deny that objection and supplement anyway. We think at that point, the trial court's determination would be subject to review, obviously. I really think the focus has to be on what the contracting officer knew, Your Honor, and I think that the general proposition where they're starting on just a wild hunch of, we think this is better. We think that would be unreasonable, Your Honor. Supplementation might not be appropriate. And what would be the course of action that the trial judge should follow? Well, we don't think there's a requirement for the court to issue an injunction at that point. Remand to the agency or remand the record to the agency while maintaining jurisdiction or— Possibly maintaining jurisdiction, but explaining it. We haven't articulated a reasonable basis. But at any time in the law, it's clear. When the trial court finds that, determines that it cannot reach a decision for plaintiff, plaintiff or defendant, at that point, remand is appropriate because the trial court— Remand without a judgment? Remand without a judgment, yes, Your Honor. Do you have any case law from this court, well, ideally from this court, in which we have blessed a remand of that sort to the agency? That would be floor to power, Your Honor. We think that's directly on point addressing. The Supreme Court's case? Yes, Your Honor. Okay. Yeah, I'm familiar with that. But is there anything that we have said in this context that remand to the contracting agency is a permissible course of action? Oh, absolutely, Your Honor. We'd also cite Impreza. Impreza? Yes, sir. Impreza wasn't really a remand, right? Wasn't that a supplementation? I'm not going to remand in supplementation. Yeah, I think it was a supplementation, not a remand. I thought Impreza talked about supplementation being, it is a supplementation because in the context of a bid protest, the contracting officer has all of the documents. So that's what Impreza does. But yes, Your Honor, with respect to remand, we would rely on floor to power. Okay. Your Honor, I would also point out, as we were addressing earlier, there wasn't a violation of the Competition and Contracting Act. Furthermore, we would say there was half the competition in this case. The Joint Appendix reflects that there were seven vendors ready, pursuant to the GSA FSSS schedule, ready to submit bids on the unitary procurement. After the procurement separated and reunified the services, there were three small business firms ready. So that is adequate competition. Appellant and his remedy, they asked for the opportunity to compete, and they're saying that their whole contention with that is even if the agency is not going to award to a single vendor, to multiple vendors, they should still be given the opportunity to compete. That would violate Federal Acquisition Regulation 6.101, which clearly states that efficiency is also an important aspect that the agency should consider when determining its needs and finding the appropriate procurement vehicle. And that's a secret requires a balance between an agency's needs and ensuring for adequate competition. Your Honor, my point in Appellant's reply is that we feel the need to respond to. We initially understood Appellant's argument to be a challenge to the trial court's decision to supplement. However, Appellant appears now to be arguing that the trial court was required to issue injunction once he determined the record was insufficient. First of all, we point out that we don't know a case law or statute of regulation that requires such a requirement of the court. And we think any such rule would obviate the trial court's equitable discretion in fashioning injunctive or declaratory relief consistent with PGBA LLC. And we think that would obviate the court's discretion in 1491 B.2 and B.4. Furthermore, it would make Section B.3 superfluous. What is B.3? I've forgotten. B.3 is the part of the provision, Your Honor, that requires trial courts to give due regard to the matters of national security. Right. As we pointed out earlier, Your Honor, the record supports the trial court's decision to supplement the record. We know at any time that when the court made comments about how there was no evidence or without any evidence or the agency hadn't done its homework, that was in a hearing. In its actual opinion, the court said, as we mentioned earlier, there is an intuitive logic and the gap in the record, which the court identified, did not invalidate the agency's original decision. We would urge this court to rely upon the court's opinion and not comments made during oral argument. And in support of that, we would cite Gamma Medical Associates. Finally, Your Honor, as we pointed out earlier, the appellant did not object to supplementation. They only asked for injunctive relief. And there has to be some specificity. Appellants essentially waited until after the process, and then when they learned that the information that was provided by supplementation, then in their brief, they argued against it. They've never filed a motion to strike. They've never noted an official objection to the court. They didn't even attempt to supplement the record on their own. So in this case, they basically sat back and basically waited. They sat on their laurels and waited and hoped that supplementation would help their argument. And then once it didn't, they said, oh, wait a minute. We're going to cry foul now. That's inappropriate in this case. And the equity is certainly way in favor of the government. For these reasons, and those that are in our brief, Your Honor, we respectfully ask the court to affirm the decision of the trial court. Thank you. Thank you, Mr. Krescheck. Mr. Kellogg, you chose to use your time rather than save it. Is there any way I could just make one small point? One small point. I appreciate it. Thank you. You made a choice, but. There's still some time left in the government. Not on your time. We'll give you one minute. Thank you, Your Honors. I appreciate it. The last point that I want to make is that if we endorse this kind of court process where somebody, a protester like CHE or any other protester, sees an inequity in a solicitation, they go through their motions. They do an agency-level protest. Then they file something in the Court of Federal Claims. One minute. They go to the expense of briefing it. They go to the expense of the hearing. And then at that point, the judge says, Well, I'm going to give the agency another chance, another bite at the apple. See if they can fix the record. That's going to destroy the protest process. I mean, why on earth would any protester ever lodge a pre-bid protest if there is a procedure out there which allows the judge to simply say, In the middle of litigation, go back and try to fix your record. That's all I have to say. Thank you. Thank you. I have no point. I take another vote.